NO. 25-50975

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

JAMEKA ELEAZER,

*Plaintiff - Appellant*,

v.

ORACLE AMERICA, INC.,

*Defendant - Appellee*.

---

On Appeal from the United States District Court
for the Western District of Texas, Austin Division
No. 1:24-CV-00777

---

**BRIEF OF APPELLANT JAMEKA ELEAZER**

---

Matt Bachop
Texas Bar Number 24055127
mbachop@ddollaw.com
DEATS DURST & OWEN
2901 Bee Caves Rd., Ste. L
Austin, Texas 78746
(512) 474-6200

*Attorney for Appellant*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| **Appellee:** | **Counsel for Appellees:** |
|---|---|
| Oracle America, Inc. | Edward M. "Ted" Smith and Sarah E. Lancaster of Cornell Smith Mierl Brutocao Burton, LLP, Austin, TX, and Sara Janes of Weisbart Springer Storm Hatchitt, LLP, Austin, TX |

| **Appellant:** | **Counsel for Appellant:** |
|---|---|
| Jameka Eleazer | Matt Bachop of Deats Durst & Owen, P.L.L.C., Austin, TX |

*/s/ Matt Bachop*
Attorney of Record for Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Jameka Eleazer respectfully contends that oral argument would not assist the Court in resolving the issues involved in this appeal.

# TABLE OF CONTENTS

Certificate of Interested Persons ........ i
Statement Regarding Oral Argument ........ ii
Table of Contents ........ iii
Table of Authorities ........ iv
Jurisdictional Statement ........ vi
Statement of Issues Presented for Review ........ vii
Statement of the Case ........ 1
Summary of Argument ........ 6
Argument & Authorities ........ 7
I. Standard of review. ........ 7
II. The district court erred by concluding that there are no fact issues on Ms. Eleazer's prima facie case of discrimination. ........ 7
III. The district court erred by concluding Ms. Eleazer failed to exhaust administrative remedies on her retaliation claim. ........ 12
Conclusion & Prayer ........ 13
Certificate of Service ........ 14
Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements ........ 15

# TABLE OF AUTHORITIES


**Cases**

*Begolli v. Home Depot U.S.A., Inc.*,
701 F.3d 1158 (7th Cir. 2012) .......... 13

*Bryan v. McKinsey & Co.*,
375 F.3d 358 (5th Cir. 2004) .......... 8

*Cousin v. Small*,
325 F.3d 627 (5th Cir. 2003) .......... 7

*Dillon v. Rogers*,
596 F.3d 260 (5th Cir. 2010) .......... 7

*Harvill v. Westward Commc'ns, L.L.C.*,
433 F.3d 428 (5th Cir. 2005) .......... 7

*Lee v. Kansas City S. Ry. Co.*,
574 F.3d 253 (5th Cir. 2009) .......... 9

*Preston v. TDFPS*,
222 F. App'x 353 (5th Cir. 2007) .......... 12, 13

*Sanchez v. Standard Brands, Inc.*,
431 F.2d 455 (5th Cir. 1970) .......... 12

*Standley v. Rogers*,
680 F. App'x 326 (5th Cir. 2017) .......... 8

**Statutes**

28 U.S.C. § 1291 .......... v

28 U.S.C. § 1331 .......... v

28 U.S.C. § 1343 .......... v

**Other Authorities**

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ENFORCEMENT GUIDANCE ON RETALIATION AND RELATED ISSUES (2016), *available at* https://www.eeoc.gov/laws/guidance/enforcement-guidance-retaliation-and-related-issues .......... 13

**Rules**

FED. R. APP. P. 32 ........................................................................................ 15

FED. R. CIV. P. 56 ........................................................................................ 7

# JURISDICTIONAL STATEMENT

## A. Subject-Matter Jurisdiction in the District Court.

This is an appeal from a final judgment of the district court in a civil case alleging employment discrimination and retaliation under state and federal statutes. The district court had original jurisdiction under 28 U.S.C. § 1331.

## B. Jurisdiction in the Court of Appeals.

Ms. Eleazer appeals the judgment of the district court below granting Defendant's Motion for Summary Judgment and dismissing Ms. Eleazer's claims. The district court judgment was entered on October 24, 2025. ROA.302. This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291.

## C. Filing Dates Establishing Timeliness of Appeal.

On October 24, 2025, the district court's final judgment was entered. ROA.302. On November 21, 2025, Ms. Eleazer timely filed her notice of appeal. ROA.303.

## D. Finality.

The appeal is from a final order or judgment that disposes of all parties' claims.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Did the trial court err by concluding that Ms. Eleazer did not meet all the elements of a prima facie case for discrimination or disparate treatment?

2. Did the trial court err by concluding that Ms. Eleazer failed to exhaust administrative remedies on her retaliation claims?

## STATEMENT OF THE CASE

### Introduction

This is a race discrimination and retaliation suit brought by Jameka Eleazer against her former employer, Oracle America, Inc., which terminated her employment in May 2024.

Ms. Eleazer was the only Black employee on her team, and her manager treated her worse than every other employee on the team from the moment he took over as her manager. The manager put Ms. Eleazer on a "Performance Improvement Plan" in March 2023, the only PIP that he has ever issued, even though her sales performance was average for her team. The plan contained quotas and goals that the manager acknowledged were unattainable based on the scope of work assigned to Ms. Eleazer.

Ms. Eleazer complained to Oracle's Human Resources Department about the PIP, stating that it was unfair and was the result of illegal discrimination based on race rather than a legitimate reflection of her work performance. Ms. Eleazer provided detailed information showing that the issues raised in the PIP were not caused by poor work performance on her part.

Oracle fired Ms. Eleazer the following month. The stated justification for the termination relied on sales numbers that were intentionally manipulated by Ms. Eleazer's managers, who fired her mere hours before a substantial deal of hers was

set to close. If that deal had been included in the analysis, Ms. Eleazer's numbers would have continued to be average for her team, instead of the lowest as Oracle claimed.

**Statement of Facts**

Jameka Eleazer is a Black woman who quickly earned a promotion after getting hired by Oracle in 2019. ROA.87. Things were going well until her manager, Mike Miezo, left the Company in 2022. ROA.87. For a couple months after his departure, Ms. Eleazer was nominally supervised by Area Manager Nicole Levitt, who gave Ms. Eleazer a negative performance review despite having very little information about her work performance. ROA.87–88.

Then, in June 2022, Garrett Miller took over as her manager. ROA.88. Ms. Eleazer was the only Black employee on Miller's team, and he treated her worse than every other employee on the team from the beginning. ROA.180–184, 203–204, 220–230. He belittled her, demanded evidence for every little thing she told him, micromanaged her, nitpicked and extensively documented her performance of menial data entry tasks, pried into her personal life, and refused to discuss career development or raises with her, none of which he did to any other employee on the team. ROA.180–184, 203– 204, 220–230.

This disparate treatment continued when Miller presented Ms. Eleazer with what he titled a "Performance Improvement Plan" in March 2023, the only PIP that

he has ever issued. ROA.207. "Performance Improvement Plan" was a misnomer, as the document did not contain any plan. ROA.128. Instead, the document consisted of complaints about Ms. Eleazer's performance that were based on misleading data, along with quotas and goals that most of the employees on the team never hit and that Ms. Eleazer's leadership acknowledged were not realistic. ROA.128, 143, 217–219, 241–244.

The PIP was issued despite the fact that in the three quarters Miller had managed Ms. Eleazer before it was issued, Ms. Eleazer ranked **second out of eight** on the team in sales in Quarter 1 (June 2022–August 2022), ROA.241; **fourth out of seven** on the team in sales in Quarter 2 (September 2022–November 2022), ROA.242; and **second out of six** on the team in sales for Quarter 3 (December 2022–February 2023), ROA.243. Those closed sales numbers represent the only objective metric describing Ms. Eleazer's work performance.[1]

Ms. Eleazer complained to the Company's Human Resources Department about the PIP, stating that it was unfair and was the result of illegal discrimination based on race rather than a legitimate reflection of her work performance. ROA.254.

[1] In its Motion for Summary Judgment, Oracle frequently refers to a pipeline generation metric, but that metric is not objective: on the contrary, sales representatives input their estimates on the size of potential deals, and Miller adjusted those numbers. He frequently adjusted Ms. Eleazer's pipeline numbers down without explaining why. ROA.226–227. Miller testified that Ms. Eleazer's ranking in the pipeline metric was not important to him. ROA.211.

Ms. Eleazer provided detailed information showing that the issues raised in the PIP were not caused by poor work performance on her part. ROA.141–144.

Oracle fired Ms. Eleazer shortly after she made that complaint. ROA.84. Knowing that they could not say that they fired her for being Black or complaining about discrimination, Ms. Eleazer's managers manufactured a situation where they could claim that Ms. Eleazer had the lowest sales numbers on her team for a short window of time by firing her mere hours before a substantial deal of hers was set to close. ROA.208. The Company knew that the closing was imminent and purposely timed the termination in that manner so that it could make this claim about her numbers. ROA.208–209, 246. If Oracle had counted Ms. Eleazer's sale that closed on the last day of the fiscal year, she would have ranked fourth out of six on the team for sales attainment for Quarter 4 (March 2023–May 2023), similar to her rankings for the other quarters in that fiscal year. ROA.231–232 (noting that the deal was worth over $60,000, which would have moved her from sixth out of six to fourth out of six for Quarter 4), 244.

From the time that Ms. Eleazer complained to HR, there was never any plan by her managers to improve Ms. Eleazer's performance, despite the title of the PIP document she was presented with. On the contrary, management's sole focus was creating a misleading paper trail to justify a termination.

Ms. Eleazer filed suit against Oracle, alleging that her termination was discriminatory and retaliatory, in violation of federal and state law. ROA.12–18. Oracle filed a motion for summary judgment, ROA.84–104, which makes the astounding claim, *We couldn't have discriminated based on race because the only other person in this area, where most of the workers are white, that we've disciplined for poor performance is from a different racial minority group*. The Company's Motion also relies heavily on sales metrics, while wholly failing to engage with Ms. Eleazer's claim that those numbers were intentionally manipulated to paint her performance in a false light, much less providing any evidence to rebut those claims. Defendant's Motion also ignores the many other forms of disparate treatment that Ms. Eleazer has identified.

Nevertheless, the district court granted the motion for summary judgment, ruling that Ms. Eleazer "has not met the fourth element of a prima facie case for discrimination or disparate treatment" and that Ms. "Eleazer's failure to include an allegation of retaliation in her EEOC charge renders her retaliation claims unexhausted and outside the jurisdiction of this court." ROA.287–302. This appeal followed. ROA.303.

## SUMMARY OF ARGUMENT

The district court erred in granting summary judgment on Jameka Eleazer's race discrimination and retaliation claims.

Ms. Eleazer established a prima facie case of discrimination: she is Black, was the only Black team member, had average sales performance, and faced adverse actions that no other similarly situated team member was subjected to, including a Performance Improvement Plan with unattainable goals and termination. The factors that Oracle highlights in suggesting that comparators are not similarly situated are consequences of discrimination.

Ms. Eleazer exhausted administrative remedies on her retaliation claim because the EEOC investigation of her charge could reasonably be expected to reach the retaliation claim.

The trial court's summary judgment should be reversed, and the case should be remanded for trial.

## ARGUMENT & AUTHORITIES

### I. Standard of review.

Summary judgment is reviewed de novo. *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmovant to provide specific facts showing the existence of a genuine issue for trial. FED. R. CIV. P. 56(c), (e). In reviewing summary judgment, the Court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). "If the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, then there is no genuine issue for trial." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 433 (5th Cir. 2005).

### II. The district court erred by concluding that there are no fact issues on Ms. Eleazer's prima facie case of discrimination.

The district court erred by ruling on summary judgment that Ms. Eleazer presented no evidence to support the fourth element of a prima facie case of discrimination. As the trial court's order recognizes, a plaintiff can meet that element by showing that she "'was replaced by someone outside of the protected class, or, in the case of disparate treatment, show[ing] that other similarly situated employees were treated more favorably.' *Standley v. Rogers*, 680 F. App'x 326, 327 (5th Cir.

2017) (quoting *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004))." ROA.295.

The trial court ruled that "Eleazer has not presented competent summary judgment evidence of a team member of hers that exhibited 'nearly identical' conduct to her own" because the "evidence presented does not reveal that Eleazer had a team member with nearly identical achieved sales attainment and sales pipeline generation percentages." ROA.297. This holding paradoxically relies exclusively on discriminatory conduct by Oracle to determine that Ms. Eleazer cannot make out a prima facie case of discrimination.

Ms. Eleazer's sales attainment (an objective number based on sales closed) was nearly identical to most of the members of her team for Quarters 1–3, and it would have been for Quarter 4 as well, but for Oracle's decision to fire her before it knew that a substantial deal was closing, so that it could claim that her sales attainment numbers were "the lowest on the team." ROA.231–232 (noting that the excluded deal was worth over $60,000, which would have moved her from sixth out of six to fourth out of six for Quarter 4), 241–244.

Pipeline generation, a metric relied on heavily by Oracle and the trial court, is not objective; instead, it reflects the manager's opinion on the size of possible sales attainment in the future. Sales representatives input their estimates on the size of potential deals, and Miller adjusted those numbers. He frequently adjusted Ms.

Eleazer's pipeline numbers down without explaining why. ROA.226–227. The numbers themselves show that Eleazer was discriminated against by Miller in the setting of her pipeline numbers: her pipeline numbers—Miller's estimates of opportunities to close sales—were much lower than everyone else's on the team, while her actual closed sales were in the middle of the pack (if all of them were counted). ROA.109–110, 241–244. The reason for that difference is that Ms. Eleazer's pipeline numbers were being influenced by something other than her opportunities for future sales. Her pipeline numbers are themselves evidence of discrimination, and Oracle should not be permitted to use its discriminatory conduct to claim that Ms. Eleazer has no comparators.

The reason for the "nearly identical" requirement is to control for any other difference between employees' conduct that "*accounts for* the difference in treatment received from the employer." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). If Miller discriminatorily failed to include a large closed sale in Ms. Eleazer's attainment numbers, and if he discriminatorily reduced Ms. Eleazer's pipeline numbers below others with similar sales opportunities, then her having lower attainment numbers and pipeline numbers than other employees on the team does not *account for* the difference in treatment and does not prevent those employees from being comparators. That is what happened in this case, or at the

very least, there is a fact question on that point, which should be resolved by the jury.

Oracle's explanation for the disparity between Miller's estimates for Ms. Eleazer's sales (lowest on the team by far) and Ms. Eleazer's actual sales (typical for the team if they are all counted) is consistent with prevalent stereotypes about Black people being lazy and is demonstrably false. Miller asserted that "Ms. Eleazer lacked the ability to drive her own sales," claiming that "field teams" were taking the lead on "most, if not all, of" Ms. Eleazer's accounts. ROA.107, 206. Miller made this claim even though he admitted that he couldn't remember a single time that he observed interactions between a field representative and Ms. Eleazer, ROA.205, and even though he admitted that he reviewed a note from the field representative assigned to Ms. Eleazer that contradicted that notion, ROA.210–211, 247. That note informed Miller of the field representative's opinion that Ms. Eleazer's "work effort and account leadership is going unseen"; that Ms. Eleazer "has something that not a lot of early sellers have; the willingness to be coached, take full accountability of a sales cycle, and the ability to move deals forward"; that Ms. Eleazer was "was instrumental in assisting with account planning, research, and whitespacing activities in the territory while also executing on campaigns to find new business opportunities"; and that Ms. Eleazer "has managed to still connect and even sell to . . . tough clients to navigate." ROA.247.

These sentiments were echoed by another field representative who worked with Ms. Eleazer. That field representative told Miller that Ms. Eleazer was "a true asset" who was "educated in internal tools," was "dependable and incredibly hard-working," and was "an impressive Applications Sales Representative, who is always working to educate our clients." ROA.248. The field representative asked Miller not to place Ms. Eleazer on a Performance Improvement Plan, saying, "I would dislike losing Jameka as a sales resource. I turn to her often for suggestions and input. She helps elicit responses from the POC's with my accounts and has gathered critical information where others have not had success . . . ." ROA.248.

Miller's claim that Ms. Eleazer was allowing the field representatives to do all the work, which is contradicted by the field representatives and is not supported by any facts, is one of the key pillars (aside from the manipulated numbers) that he uses to justify her firing. ROA.107–109. There is no evidence in the record that Miller actively distorted the role of field representatives in the sales made by others on his team, which is another example of disparate treatment. This is another example where the supposed difference (claims about effort and reliance on field teams) does not *account for* the difference in treatment; it is *a consequence of* the difference in treatment, which we allege was caused by racial animus. There is enough evidence in support of that theory to create a fact question for a jury to

answer. As such, summary judgment was inappropriate. Ms. Eleazer asks the Court to reverse the summary judgment and remand the discrimination claim for trial.

## III. The district court erred by concluding Ms. Eleazer failed to exhaust administrative remedies on her retaliation claim.

The district court granted summary judgment on Ms. Eleazer's retaliation claim, holding that she failed to exhaust administrative remedies on that claim. ROA.299–301. The trial court ruled that in the body of the EEOC charge, Ms. "Eleazer did not allege having taken any actions that would have provoked retaliation," and that Ms. Eleazer's complaint about retaliation in her initial inquiry to the EEOC did not exhaust administrative remedies because the inquiry is not a "charge." ROA.299–301.

As the trial court's ruling notes, the claims exhausted through the EEOC process are "limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." ROA.299 (quoting *Preston v. TDFPS*, 222 F. App'x 353, 357 (5th Cir. 2007)). This is because "the civil action is much more intimately related to the EEOC investigation than to the words of the charge which originally triggered the investigation." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465–66 (5th Cir. 1970).

The trial court's note that Ms. Eleazer's inquiry is not a "charge" does not address her argument that the EEOC's investigation could reasonably be expected

to include a retaliation claim that was asserted in the EEOC inquiry that led to the filing of the charge. At the very least, there is a fact question on "reasonable expectations" that should be resolved by the jury. *See, e.g.*, *Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1159–61 (7th Cir. 2012) (noting that fact questions on administrative exhaustion in Title VII cases should be resolved by juries).

In addition, because "Retaliation is now the most frequently alleged basis of discrimination in all sectors, including the federal government workforce," U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ENFORCEMENT GUIDANCE ON RETALIATION AND RELATED ISSUES (2016), *available at* https://www.eeoc.gov/laws/guidance/enforcement-guidance-retaliation-and-related-issues, it could be reasonably expected that the EEOC would inquire about retaliation in all investigations, especially considering that "we construe employment discrimination charges with the utmost liberality," *Preston*, 222 F. App'x at 356. In the alternative, whether that could be reasonably expected is a fact question that should be resolved by the jury.

Ms. Eleazer thus asks the Court to reverse the trial court's summary judgment on her retaliation claim and remand it for trial.

## **CONCLUSION & PRAYER**

For all the reasons argued above, Appellant Jameka Eleazer respectfully prays that the Court reverse the trial court's summary judgment and remand Ms. Eleazer's

claims for trial.

*Respectfully submitted,*

DEATS DURST & OWEN, PLLC
Matt Bachop
State Bar No. 24055127
mbachop@ddollaw.com
2901 Bee Caves Rd., Ste. L
Austin, Texas 78746
(512) 474-6200
(512) 474-7896 (Fax)

*/s/ Matt Bachop*
COUNSEL FOR APPELLANT

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing brief has been served on counsel for Appellee by the Court's CM/ECF system on this 13th day of April, 2026.

*/s/ Matt Bachop*
Matt Bachop

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 3,882 words.

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO (Version 2603 Build 16.0.19822.20086) 64-bit in Times New Roman 14-point font.

*/s/ Matt Bachop*
Matt Bachop

Attorney for Appellant Jameka Eleazer

Dated April 13, 2026