NO. 25-50975

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

JAMEKA ELEAZER,

*Plaintiff - Appellant*,

v.

ORACLE AMERICA, INC.,

*Defendant - Appellee*.

On Appeal from the United States District Court
for the Western District of Texas, Austin Division
No. 1:24-CV-00777

## REPLY BRIEF OF APPELLANT JAMEKA ELEAZER

Matt Bachop
Texas Bar Number 24055127
mbachop@ddollaw.com
DEATS DURST & OWEN
2901 Bee Caves Rd., Ste. L
Austin, Texas 78746
(512) 474-6200

*Attorney for Appellant*

# <u>TABLE OF CONTENTS</u>

Table of Contents ............................................................................................ i

Table of Authorities ........................................................................................ ii

Summary of Argument ....................................................................................1

Argument & Authorities ..................................................................................1

I.    Oracle's responses to Ms. Eleazer's primary argument for reversal of the trial court's judgment lack merit. ..................................................................................1

    A.    Oracle discriminatorily manipulated Ms. Eleazer's attainment numbers. ..2

    B.    Oracle discriminatorily manipulated Ms. Eleazer's pipeline generation numbers.........................................................................................................2

    C.    Oracle discriminatorily misrepresented the role of field representatives in Ms. Eleazer's sales. ........................................................................................3

II.    Ms. Eleazer presented plenty of evidence of pretext.....................................5

III.    Oracle's Brief changes Oracle's story on the reasons for Ms. Eleazer's termination. The change is evidence of pretext. .......................................................6

IV.    There is a fact question on whether Ms. Eleazer exhausted her administrative remedies on her retaliation claim.............................................................................8

Conclusion & Prayer.......................................................................................9

Certificate of Service ....................................................................................10

Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements...............................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Begolli v. Home Depot U.S.A., Inc.*,
701 F.3d 1158 (7th Cir. 2012)........................................................................9

*Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*,
482 F.3d 408 (5th Cir. 2007)..........................................................................8

*Donaghey v. Ocean Drilling & Expl. Co.*,
974 F.2d 646 (5th Cir. 1992)..........................................................................4

*Ernst v. Methodist Hospital System*,
1 F.4th 333 (5th Cir. 2021)............................................................................8

*Gee v. Principi*,
289 F.3d 342 (5th Cir. 2002)..........................................................................8

*Hager v. Brinker Tex., Inc.*,
102 F.4th 692 (5th Cir. 2024)........................................................................8

*Maurer v. Independence Town*,
870 F.3d 380 (5th Cir. 2017)..........................................................................4

**Rules**

FED. R. APP. P. 32........................................................................................10

FED. R. CIV. P. 56..........................................................................................4

## SUMMARY OF ARGUMENT

Oracle's Brief does not provide satisfactory responses to Ms. Eleazer's primary argument for reversal of the district court's summary judgment. This argument is sufficient to support reversal of the judgment.

Oracle's Brief also changes the Company's story on the reasons for terminating Ms. Eleazer, creating additional evidence that the stated reasons are pretextual.

## ARGUMENT & AUTHORITIES

**I.      Oracle's responses to Ms. Eleazer's primary argument for reversal of the trial court's judgment lack merit.**

In her Brief, Ms. Eleazer argued that in concluding Ms. Eleazer did not identify any appropriate comparators, the district court relied on discriminatory conduct by Oracle to find that the proffered comparators did not engage in "nearly identical" conduct to Ms. Eleazer. *Appellant's Brief* at 7–12. Ms. Eleazer urged that (1) the sales attainment numbers relied on by Oracle were manipulated with discriminatory intent by excluding a large sale that Ms. Eleazer closed at the end of the year; (2) the pipeline generation numbers relied by Oracle were manipulated with discriminatory intent by Ms. Eleazer's manager adjusting her estimates down, removing all reliability and usefulness from the estimates; and (3) the claims of Ms. Eleazer's "lack of urgency" and allowing field teams to do her work were false claims made with discriminatory intent because similar claims were not made

1

against non-Black employees, the claims were supported by no competent evidence, and the claims were rebutted by the people in the best position to know. *Appellant's Brief* at 7–12.

A. **Oracle discriminatorily manipulated Ms. Eleazer's attainment numbers**.

Oracle's response to the manipulation of Ms. Eleazer's attainment numbers is that Oracle would have fired Ms. Eleazer even if it counted all her sales, which would have left her in the middle of the pack for attainment on her team. *Appellee's Brief* at 31–32. This is an admission of discriminatory intent, not a defense. Ms. Eleazer's argument is that she was singled out to be disciplined even though her performance was typical, and Oracle effectively concedes that point by claiming that it would have fired her even with an accurate assessment of her sales performance, which would have made clear that other employees on her team had worse performance.

B. **Oracle discriminatorily manipulated Ms. Eleazer's pipeline generation numbers**.

Oracle's Brief argues that Ms. Eleazer has forfeited the argument about pipeline generation numbers because "Eleazer did not address her pipeline numbers at all in the district court." *Appellee's Brief* at 29. The truth is that the main argument in Ms. Eleazer's response to the motion for summary judgment was that she was singled out by having her numbers manipulated and by being disciplined for performance reasons when her performance was typical for members of her team.

ROA.181–184. Ms. Eleazer preserved the argument that her performance was nearly identical to comparator sales employees on her team for appellate review.

Oracle next argues there is no evidence that Ms. Eleazer's manager did not also adjust teammates' pipeline numbers down. *Appellee's Brief* at 29. But the evidence is in the numbers themselves: Miller set Ms. Eleazer's pipeline estimates as by far the lowest when her attainment numbers were middle-of-the-pack (if they are all counted). ROA.95. This is evidence that Miller adjusted Ms. Eleazer's pipeline numbers down more than he did for other employees.

Oracle's response to that evidence is a statement that pipeline generation is a meaningless metric because "there is not necessarily a direct correlation between pipeline and attainment." *Appellee's Brief* at 30–31. The numbers appear to bear that out, as the pipeline numbers presented by Oracle do not appear to correlate in any way with the attainment numbers presented by Oracle. ROA.95. Whether the Court accepts Ms. Eleazer's argument that her pipeline numbers were set in a discriminatory way or Oracle's argument that pipeline is not connected to closing sales—which is what Ms. Eleazer was employed to do—the pipeline numbers do not support a legitimate, nondiscriminatory reason for Oracle to fire Ms. Eleazer.

### C. *Oracle discriminatorily misrepresented the role of field representatives in Ms. Eleazer's sales*.

With respect to Ms. Eleazer's claim that Miller lied about the extent to which field representatives were doing her work, Oracle argues that the notes from the field

representatives who worked with Ms. Eleazer—which disprove Miller's claims— "cannot be presented in a form that would be admissible in evidence." *Appellee's Brief* at 34. The Brief cites FED. R. CIV. P. 56(c)(2), but Oracle failed to file an objection under Rule 56(c)(2) and does not even claim that it did so. It is "the obligation of the opposing party to object" because the "objection gives the proffering party a chance 'to explain the admissible form that is anticipated.'" *Maurer v. Independence Town*, 870 F.3d 380, 384 (5th Cir. 2017) (quoting Advisory Committee's Note to 2010 Amendment to FED. R. CIV. P. 56); *see also Donaghey v. Ocean Drilling & Expl. Co.*, 974 F.2d 646, 650 (5th Cir. 1992) (noting that in the absence of a timely objection or motion to strike, defects in summary judgment evidence ordinarily are waived). Oracle's argument about the notes has thus been waived through Oracle's failure to object under FED. R. CIV. P. 56(c)(2). Even if the argument had not been waived, the contents of the notes could be presented in admissible form through testimony by the field representatives who wrote the notes.

Oracle next argues that even if the notes can be considered, they are "irrelevant" because Miller could have also lied about the role of field representatives in non-Black employees' sales to discipline those employees, leaving Ms. Eleazer without a comparator who was treated more favorably. *Appellee's Brief* at 35. But the record shows that Miller never disciplined any non-Black employee for performance, including the team members with worse performance than Ms.

Eleazer. ROA.107–110, 207.

Ms. Eleazer has (at least) created a fact issue on whether she was treated less favorably than similarly situated comparators.

## II.    Ms. Eleazer presented plenty of evidence of pretext.

Oracle next argues that even if Ms. Eleazer established a prima facie case, she has no evidence that Oracle's proffered legitimate nondiscriminatory/nonretaliatory reason for her termination was pretextual. *Appellee's Brief* at 39–45.

Oracle's Brief acknowledges the evidence of pretext identified by Ms. Eleazer in the district court and claims that Ms. Eleazer's arguments "are not borne out by the record." *Appellee's Brief* at 42. However, the record reveals that fact questions exist on each argument.

| Oracle's Claim | The record evidence |
|---|---|
| "There is no evidence that Eleazer's performance was typical of her team . . . ." *Appellee's Brief* at 42. | Ms. Eleazer ranked **second out of eight** on the team in sales in Quarter 1, ROA.241; **fourth out of seven** on the team in sales in Quarter 2, ROA.242; **second out of six** on the team in sales for Quarter 3 (December 2022–February 2023), ROA.243; and would have ranked **fourth out of six** on the team in sales for Quarter 4 if all her sales had been counted, ROA.208–209, 231–232, 246. |
| "There is no evidence . . . of any 'manipulation' . . . ." *Appellee's Brief* at 42. | Ms. Eleazer's managers manufactured a situation where they could claim that Ms. Eleazer had the lowest sales numbers on her team for a short window of time by firing her mere hours before a substantial deal of hers was set to close. ROA.208. The Company knew that the closing |

| | |
|---|---|
| | was imminent and purposely timed the termination in that manner so that it could make this claim about her numbers. ROA.208–209, 246. |
| "There is no evidence . . . of anybody claiming that Eleazer had field representatives doing 'all her work,' calling her 'lazy,' or stereotyping her in any way . . . ." *Appellee's Brief* at 42. | Miller testified in his deposition that "field teams were taking the lead" on "most, if not all, of Jameka's accounts at the time," ROA.206, contradicting the field representatives themselves, who made clear that that Ms. Eleazer's "work effort and account leadership is going unseen" by Miller, ROA.247. |
| "[T]here is absolutely no evidence" that the description of the sales performance of the only other person in the Austin office—where most sales workers were white— terminated by Oracle for sales performance, who was also a racial minority, "was 'manufactured' or of any 'pattern.'" *Appellee's Brief* at 42. | Like Ms. Eleazer, the other employee was given a "Performance Improvement Plan" that contained no plan to improve her performance. ROA.146. Just as with Ms. Eleazer, the manager, area manager, and HR representative looked for a metric they could manipulate to say that the other employee was the lowest on the team in that metric. ROA.250–252. And just as with Ms. Eleazer, Oracle made the unverifiable claim that one of the other employee's big deals was 'a field led deal,' implying that she should get less credit for it, without acknowledging the role of field representatives in sales made by other members of the team. ROA.96–97. |

In addition, Oracle's Brief itself introduces additional evidence of pretext (more on this in Section III below). Ms. Eleazer has presented more than enough evidence to go to a jury on pretext.

## III. Oracle's Brief changes Oracle's story on the reasons for Ms. Eleazer's termination. The change is evidence of pretext.

Oracle's Brief claims that "Oracle terminated Eleazer's employment because

she did not show significant improvement in the four areas identified in her PIP: (1) lack of overall attainment, (2) unsatisfactory pipeline, (3) lack of KPI, or sales generating, activities, and (4) lack of urgency and proactivity." *Appellee's Brief* at 27. In its motion for summary judgment, Oracle mentioned the other three issues, but said nothing about KPI activities. This is Oracle's description from the motion about why Ms. Eleazer was fired:

> As the end of Oracle's Fiscal Year 2023 approached, Ms. Eleazer continued to rank last on her team for overall sales attainment, and her pipeline generation numbers never exceeded 28% of her goals. Additionally, despite repeated coaching on these issues, Ms. Eleazer continued to rely on internal team members (managers, field representatives, and renewal teams) to progress and close sales on her accounts. Most troublingly, Mr. Miller continued to observe that Ms. Eleazer was merely "checking boxes" and doing "busy work" more akin to the entry level position of Business Development Consultant that she previously held at Oracle rather than focusing on activities that could result in sales revenue or pipeline creation as required of all ASR's.

> As a result of these failures to show sufficient improvement in her performance, the determination was made by Mr. Miller and Ms. Levitt, in consultation with Ms. Choi, to move forward with terminating Ms. Eleazer's employment.

ROA.91–92 (internal citations omitted).

Because Oracle's motion made no arguments about KPI activities, there is no evidence about them in the summary judgment record, but the information exchanged in discovery revealed that very few sales representatives met Oracle's KPI activity goals.

Oracle's change in its claimed reasons for Ms. Eleazer's termination—adding a claim about KPI activities—is itself evidence of pretext. The Fifth Circuit has "long held that a defendant's shifting, inconsistent reasons for objectionable conduct can provide sufficient evidence of pretext." *Hager v. Brinker Tex., Inc.*, 102 F.4th 692, 704 (5th Cir. 2024); *see Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 n.11 (5th Cir. 2007) ("[A]n employer's inconsistent explanations for its employment decisions at different times permit[ ] a jury to infer that the employer's proffered reasons are pretextual."); *Gee v. Principi*, 289 F.3d 342, 347–48 (5th Cir. 2002) (recognizing that a "disingenuous and inconsistent" explanation for discriminatory conduct casts doubt on the proffered reason, which is sufficient to defeat summary judgment because "a factfinder may infer the ultimate fact of retaliation from the falsity of the explanation").

**IV.   There is a fact question on whether Ms. Eleazer exhausted her administrative remedies on her retaliation claim.**

Oracle's Brief urges that "[t]here is no 'fact question' for a jury to resolve" on exhaustion because Ms. Eleazer's intake questionnaire to the EEOC "cannot be deemed a charge," citing *Ernst v. Methodist Hospital System*, 1 F.4th 333 (5th Cir. 2021). *Appellee's Brief* at 47–48. Ms. Eleazer conceded in her opening Brief that the intake questionnaire is not a "charge," which is the only issue addressed in *Ernst*. Ms. Eleazer argued that a jury should determine whether an investigation should be "reasonably expected" to include a retaliation claim that was asserted in the EEOC

inquiry that led to the filing of the charge. *See Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1159–61 (7th Cir. 2012) (noting that fact questions on administrative exhaustion in Title VII cases should be resolved by juries). Oracle did not respond to that argument.

## CONCLUSION & PRAYER

For all the reasons argued above, along with all the reasons argued in her opening Brief, Appellant Jameka Eleazer respectfully prays that the Court reverse the trial court's summary judgment and remand Ms. Eleazer's claims for trial.

*Respectfully submitted,*

DEATS DURST & OWEN, PLLC
Matt Bachop
State Bar No. 24055127
mbachop@ddollaw.com
2901 Bee Caves Rd., Ste. L
Austin, Texas 78746
(512) 474-6200
(512) 474-7896 (Fax)

   */s/ Matt Bachop*
COUNSEL FOR APPELLANT

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing brief has been served on counsel for Appellee by the Court's CM/ECF system on this 6th day of July, 2026.

/s/ Matt Bachop
Matt Bachop

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 2,655 words.

2.    This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO (Version 2605 Build 16.0.20026.20168) 64-bit in Times New Roman 14-point font.

/s/ Matt Bachop
Matt Bachop
